Filed 8/9/23; Certified for Publication 8/31/23 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>KARL WILLIAM DORON,<br><br>    Defendant and Appellant. | D079799<br><br><br><br>(Super. Ct. No. SCD280854) |

APPEAL from a judgment of the Superior Court of San Diego County, Laura W. Halgren and Howard H. Shore, Judges.  Reversed and remanded with directions.

Lopas Law and Matthew A. Lopas for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters and Charles C. Ragland, Assistant Attorneys General, and Christopher P. Beesley and Michael D. Butera, Deputy Attorneys General for Plaintiff and Respondent.

Karl William Doron appeals from a judgment following his guilty plea to nine counts of robbery (Pen. Code,[1] § 211; counts 1-3, 5, 7-11), two counts of attempted robbery (§§ 644, 211; counts 4 and 6), and allegations he was armed with a firearm during the commission of counts 8 through 11 (§ 12022, subd. (a)(1)). Before entering into his plea, Doron unsuccessfully requested pretrial mental health diversion under section 1001.36. Thereafter, the court sentenced Doron to a prison sentence of 10 years four months in accordance with his plea, consisting of consecutive one-year terms (one-third the midterm) for each of counts 1-3, 5, 7, and 8; a consecutive eight-month term (one-third the midterm) on each of counts 4 and 6; concurrent low terms of two years on each of counts 9 and 11; and a two-year low term plus a consecutive one year for the firearm enhancement allegation (§ 12022, subd. (a)(1)) on count 10. The court struck the section 12022, subdivision (a)(1) enhancements on counts 8 and 9 and imposed a concurrent one-year term for the count 11 enhancement.

In his initial appellate briefing, Doron contended the court abused its discretion by ruling he had not made a prima facie showing he was entitled to mental health diversion.[2] After the People filed their respondent's brief, the Legislature amended section 1001.36 to revise the eligibility test for pretrial diversion (Stats. 2022, ch. 735, § 1, eff. Jan. 1, 2023), and the parties

---

[1]    Undesignated statutory references are to the Penal Code.

[2]    Specifically, Doron maintained that in finding his mental illness was not a significant factor in the commission of the offenses, the court applied an overly burdensome and erroneous legal standard that lacked evidentiary support. He contended the court invaded the Legislature's province by finding that even if his mental illness were a significant factor in the charged crimes, the crimes were unsuitable for diversion.

submitted supplemental briefing on the issue. Doron now contends under the amended statute, which applies retroactively to his case, the trial court was required to find his mental disorder was a substantial factor in the commission of his crimes absent clear and convincing evidence to the contrary. He maintains there is no substantial evidence to rebut this presumption, and thus he is both eligible and suitable for pretrial mental health diversion. Doron alternatively asks that we remand his matter for an evidentiary hearing governed by section 1001.36's new principles.

The People concede, and we agree, that amended section 1001.36 applies retroactively to Doron's nonfinal judgment. They argue the proper remedy is not for this court to engage in factfinding so as to decide whether Doron meets the criteria for diversion, but to remand the matter for a new prima facie evidentiary hearing consistent with section 1001.36's amendments. We agree with the People that the proper course is to remand the matter with directions that the trial court consider Doron's request for mental health diversion under amended section 1001.36.

FACTUAL AND PROCEDURAL BACKGROUND

We need not summarize the detailed facts of Doron's underlying offenses, as they are relevant only to the extent they bear on whether Doron meets the criteria for mental health diversion, a question we leave for the trial court.

As alleged in the July 2019 information, or recounted from the preliminary hearing transcripts cited in Doron's motion for pretrial mental health diversion, between December 28, 2018, and March 5, 2019, Doron entered credit unions in San Diego County and robbed or attempted to rob

3

tellers, at times handing the teller a note demanding money or orally demanding money. Doron was armed with a handgun during two of the robberies. Police arrested Doron on March 5, 2019.

After the People charged Doron with the offenses and gun enhancements, he moved the court for a grant of pretrial mental health diversion under section 1001.36. Pointing out he was a United States Marine Corps veteran, had obtained a Ph.D. and lacked any criminal record, he asserted a mental health expert had diagnosed him with major depressive disorder, a qualifying mental disorder, and he previously was treated for ADHD. Doron argued there was a significant nexus between his mental disorder and the charged crimes, which assertedly were the result of a mistreated mental health condition, including an incorrect medication regime. He argued his expert, clinical and forensic psychologist Clark Clipson, would opine that the symptoms motivating his criminal behavior had responded to mental health treatment. Doron supported his motion with Dr. Clipson's neuropsychological evaluation, as well as military records, letters attesting to Doron's good character, and jail records.

The People opposed the motion, stating Doron had the burden of proving he was entitled to relief. While the People conceded Doron had made a prima facie showing that he suffered from a qualifying mental disorder, they argued he did not show the disorder was a significant factor in the commission of his offenses. They also argued Doron did not establish Dr.

4

Clipson believed the symptoms motivating his behavior would respond to treatment.[3]

The trial court denied the motion. In a June 2020 statement of decision, it explained section 1001.36 vested in it discretion to decide whether to grant diversion even if a defendant satisfied the statutory requirements. Though the court found Doron had shown prima facie that his symptoms would respond to mental health treatment, had proposed a specific treatment plan, and he would not pose an unreasonable risk of danger to public safety if treated in the community, it ruled it could not conclude Doron's mental illness was a significant factor in the commission of the charged offenses. The court reasoned: "With regard to whether defendant's mental illness was a significant factor in the commission of the charged offenses, defendant is charged with committing [seven] completed robberies and [two] attempted robberies of credit unions over a [three]-month period. The report submitted

---

[3]     As for whether the disorder played a significant factor, the People asserted Doron's evidence suggested *another* undiagnosed medical condition—bipolar II disorder—might have contributed to the crimes. They argued Dr. Clipson's report did not show Doron's diagnosed disorders played a significant role in his commission of the robberies. As for Doron responding to treatment, the People argued: "Rather than specifying a treatment plan for an underlying mental disorder symptom that caused the behavior, Dr. Clipson's report merely spells out a plan that calls for [Doron] to be 'further evaluated to ensure an accurate diagnosis of his mood disorder.' Dr. Clipson's non-committal with respect to whether the defendant even has this symptom [*sic*] is shown by his statement . . . that '[i]f indeed he has a hypomanic component to his depressive condition, he should be treated accordingly . . . .' This is not an opinion that the symptom motivating the defendant's criminal behavior would respond to treatment. Rather, it is an outline of what the defense still needs to do if they hope to obtain such an opinion. Consequently, the court must also deny the defendant's request for mental health diversion on this prong of the statute as well."

by Dr. . . . Clipson diagnoses defendant with major depressive disorder, unspecified attention deficit hyperactivity disorder 'by history,' and medication[-]induced bipolar disorder. Dr. Clipson opines that the antisocial behavior displayed in this case 'is very much out of character' for the defendant. He notes that 'being in a manic state in which he is feeling agitated and grandiose could have caused (defendant) to spend money excessively and ultimately contributed to his decision to engage in the bank robberies, an activity with a high potential for painful consequences.' [¶] The preliminary hearing transcript includes evidence that the defendant wore some combination of hats, sunglasses or face coverings during each incident, and either presented demand notes or made verbal demands for money to the tellers involved. In two of the incidents, he was armed with a handgun, though he never used it. [¶] By his conduct and the language used during these incidents, as well as the fact that these incidents occurred over a [three]-month period, the defendant demonstrated significant planning and an ongoing willingness to use force or fear to steal money from financial institutions. His mental diagnoses certainly may have contributed to his desire to perpetrate the charged crimes, but that contribution does not support a conclusion that his mental illness was a significant factor in the commission of the charged offenses."

The court found an additional basis to deny Doron's request, finding that even if his mental illness was a significant factor in the charged crimes, which were not statutorily disqualified, it would exercise its discretion to find the offenses unsuitable for diversion: "Although mental health diversion might satisfy the objectives of encouraging the defendant to lead a law-abiding life and deterring him from future offenses, a series of [nine] robberies or attempted robberies of financial institutions involves the use of

6

force or fear on members of the public that justifies placing the goals of punishment and deterrence of others by demonstrating the consequences of such criminal behavior above the needs of the defendant."

Thereafter, Doron pleaded guilty to all counts and allegations,[4] and received the sentence indicated above.

## DISCUSSION

### I. *Retroactive Application*

Because Doron's judgment is not final, recently amended section 1001.36 applies retroactively to his case. (Accord, *People v. Frahs* (2020) 9 Cal.5th 618, 624; *People v. Braden* (2023) 14 Cal.5th 791, 802.) In *Frahs*, the California Supreme Court emphasized that courts look to the Legislature's intent to determine whether a law is meant to apply retroactively. (*Frahs*, at p. 627.) *Frahs* held that neither the text nor history of then newly enacted section 1001.36 clearly indicated a contrary intent by the Legislature as to retroactivity, and thus, "defendants whose cases were not final on appeal, and who had no opportunity to request diversion in the trial court, should be permitted to do so." (*Braden*, at p. 802, citing *Frahs*, at pp. 624, 628-637.)

We have reviewed the amended statute as well as the Legislative Counsel's Digest to Senate Bill No. 1223, which changed the eligibility criteria of section 1001.36, and reach the same conclusion as *Frahs*. Section 1001.36 still mitigates possible punishment for the class of persons who suffer from a qualifying mental disorder; "the possibility of being granted mental health diversion rather than being tried and sentenced 'can result in dramatically different and more lenient treatment.'" (*People v. Frahs*, *supra*, 9 Cal.5th at p. 631.) "On its face, the diversion statute states the legislative

---

4    Doron pleaded "to the sheet," meaning he pleaded guilty to all counts and admitted all enhancement allegations. (*People v. Codinha* (2021) 71 Cal.App.5th 1047, 1059.)

7

purpose 'to promote . . . [¶] [i]ncreased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety' (§ 1001.35, subd. (a)), and the procedures instituted by the enactment carry the potential of substantial reductions in punishment for the aforementioned parties." (*Ibid.*)

This conclusion holds for the amended law, which, as we explain more fully below, changes the eligibility criteria so as to simplify and strengthen the law, broadening the availability of mental health diversion in appropriate cases. (See Assem. Com. on Pub. Safety, Rep. on Sen. Bill No. 1223 (2021-2022 Reg. Sess.), as amended June 23, 2022, pp. 6-7 [amendment to section 1001.36 codified Committee on Revision of the Penal Code recommendation that "the law be changed to simplify the procedural process for obtaining diversion by presuming that a defendant's diagnosed 'mental disorder' has a connection to their offense. A judge could deny diversion if that presumption was rebutted or for other reasons currently permitted under the law, including finding that the individual would pose an unreasonable risk to public safety if placed in a diversion program"].)[5]

II. *Mental Health Diversion, Amended Section 1001.36, and Standard of Review*

The Legislature in June 2018 enacted section 1001.36, creating a pretrial diversion program for certain persons with mental health disorders. (*People v. Frahs, supra*, 9 Cal.5th at p. 624; *People v. Qualkinbush* (2022) 79 Cal.App.5th 879, 886.) "The primary purposes of the legislation are to keep people with mental disorders from entering and reentering the criminal

---

[5] On our own motion, we take judicial notice of the cited portion of Senate Bill No. 1223's legislative history. (Evid. Code, §§ 452, subd. (c), 459; *People v. Sherman* (2023) 91 Cal.App.5th 325, 332, fn. 3.)

justice system while protecting public safety, to give counties discretion in developing and implementing diversion across a continuum of care settings, and to provide mental health rehabilitative services. [Citation.] Diversion can be 'viewed as a specialized form of probation, . . . [that] is intended to offer a second chance to offenders who are minimally involved in crime and maximally motivated to reform . . . .' " (*Qualkinbush*, at p. 886.)

"As originally enacted, section 1001.36 provided that a trial court may grant pretrial diversion if it finds all of the following: (1) the defendant suffers from a qualifying mental disorder; (2) the disorder played a significant role in the commission of the charged offense; (3) the defendant's symptoms will respond to mental health treatment; (4) the defendant consents to diversion and waives his or her speedy trial right; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community." (*People v. Frahs*, *supra*, 9 Cal.5th at pp. 626-627, citing former § 1001.36, subd. (b)(1)-(6).) The statute was later amended to specify that defendants charged with certain crimes, such as murder and rape, were ineligible for diversion. (*Frahs*, at p. 627, citing § 1001.36, subd. (b)(2), as amended by Stats. 2018, ch. 1005, § 1.) This version of the statute only required that the court be "satisfied" the defendant's mental disorder was a significant factor and provided the court could make such a conclusion based on "any relevant and credible evidence," including police reports, preliminary hearing transcripts, statements by defendant's mental health provider, and other medical records. (Former section 1001.36, subd. (b)(1)(B).)

If the defendant made a prima facie showing that he or she met all of the threshold eligibility requirements and that he or she and the offense were suitable for diversion, and the trial court was satisfied that the recommended

9

program of mental health treatment would meet the specialized mental health treatment needs of the defendant, then the court had the discretion to grant pretrial diversion. (*People v. Frahs*, *supra*, 9 Cal.5th at p. 627; former § 1001.36, subd. (c)(1)(A).)

The most recent amendments to section 1001.36 went into effect on January 1, 2023. The Legislature agreed with a recommendation to "simplify the procedural process for obtaining diversion by presuming that a defendant's diagnosed 'mental disorder' has a connection to their offense" and permit the court to deny diversion if the People rebutted the presumption. (See Assem. Com. on Pub. Safety, Rep. on Sen Bill No. 1223, *supra*, p. 6.) The amended statute provides that a defendant is eligible for mental health diversion if (1) the defendant presents evidence that in the last five years he has been diagnosed by a qualified mental health expert with a mental disorder as identified in the most recent edition of the Diagnostic and Statistical Manual of Mental Disorders; and (2) the defendant's mental disorder was a significant factor in the commission of the charged offense. (§ 1001.36, subd. (b)(1), (2).)

As to the second criteria, section 1001.36 now reads: "If the defendant has been diagnosed with a mental disorder, the court shall find that the defendant's mental disorder was a significant factor in the commission of the offense unless there is clear and convincing evidence that it was not a motivating factor, causal factor, or contributing factor to the defendant's involvement in the alleged offense." (§ 1001.36, subd. (b)(2).)

If a defendant satisfies the eligibility requirements, the court then must consider whether the defendant is suitable for diversion. (§ 1001.36, subd. (c).) Under the statute, a defendant is suitable when the following criteria are met: (1) in the opinion of a qualified mental health expert, the

defendant's symptoms of the mental disorder related to the criminal behavior would respond to mental health treatment; (2) the defendant consents to diversion; (3) the defendant agrees to comply with treatment; and (4) the defendant will not pose an unreasonable risk of danger to public safety, as defined in section 1170.18, if treated in the community.  (§ 1001.36, subd. (c).)

The court in its discretion may order the defendant to diversion if it finds the defendant both eligible and suitable.  (§ 1001.36, subd. (a).)  Thus, a diversion order is expressly discretionary with the court, even when all of the criteria are met.  (§ 1001.36, subd. (a) ["[T]he court *may, in its discretion*" (italics added) grant pretrial diversion if the defendant satisfies eligibility and the court determines the defendant is suitable]; *People v. Gerson* (2022) 80 Cal.App.5th 1067, 1080.)  " 'A court abuses its discretion when it makes an arbitrary or capricious decision by applying the wrong legal standard [citations], or bases its decision on express or implied factual findings that are not supported by substantial evidence.' " (*Gerson*, at p. 1080, quoting *People v. Moine* (2021) 62 Cal.App.5th 440, 449.)

III. *The Matter Must Be Remanded for the Court to Apply the Amended Law*

Doron contends that given the new law, the trial court applied the wrong standard.  He further argues there is no substantial evidence to rebut the presumption that his mental health disorder was a substantial factor in the commission of his offenses.  Thus, he asks that we reverse the court's order and direct the court to grant his motion on grounds he has shown he is both eligible and suitable for pretrial mental health diversion.

The People respond that there is no certainty Doron may be able to establish eligibility.  They argue neither party below presented evidence suggesting Doron's diagnosed mental disorders contributed to the commission of his robberies.  Rather, they point out Doron's theory was that he was

11

suffering from a misdiagnosed case of bipolar disorder and had committed the crimes in a manic state. According to the People, that theory cannot suffice because no qualified mental health professional has diagnosed Doron with that condition. They also assert Doron's expert attributed the onset of his alleged mania to his increased dose of an antidepressant, a side effect of medication rather than an underlying symptom of a diagnosed disorder, and thus Doron's claim about his mental state when he committed the crimes could not satisfy the eligibility prong. The People argue that these circumstances, combined with evidence of Doron's rational financial motive and planning, may constitute clear and convincing evidence his diagnosed mental health disorders were not a motivating, causal or contributing factor to his crimes. They ask us to remand for a new prima facie hearing to give Doron the opportunity to prove his eligibility under the amended law.

Doron was entitled to the court's *informed* discretion on his motion for mental health diversion. (Accord, *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391 [involving the court's sentencing discretion].) A court unaware of the scope of its discretionary powers " 'can no more exercise that "informed discretion" than one whose [decision] is or may have been based on misinformation regarding a material aspect of a defendant's record.' " (*Ibid*.) Under these circumstances, the proper remedy is to remand "unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*Ibid*.)

Here, the trial court understandably did not apply the presumption and clear and convincing evidentiary burden now in section 1001.36. We decline to conclude that on this record, the court would clearly reach the same conclusions about eligibility or suitability under the new law. (See, e.g., *People v. Gutierrez, supra,* 58 Cal.4th at p. 1391; *People v. Banner* (2022) 77

12

Cal.App.5th 226, 242 [addressing whether defendant's mental illness was a contributing factor to the crime for purposes of sentencing].) In particular, whether the record contains "clear and convincing evidence that [any qualifying mental illness] was not a motivating factor, causal factor, or contributing factor to [Doron's] involvement in the alleged offense[s]" is "quintessential factfinding" (*People v. Gerson*, *supra*, 80 Cal.App.5th at p. 1079) and thus a question best left to the trial court to answer in the first instance. We express no view concerning the proper resolution of Doron's motion and the eligibility or suitability factors on remand.

DISPOSITION

We reverse the order denying Doron's motion for mental health diversion and remand the matter with directions that the trial court conduct a new hearing to consider his application for mental health diversion under section 1001.36 as amended by Senate Bill No. 1223.


O'ROURKE, Acting P. J.

WE CONCUR:


IRION, J.


DATO, J.

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D079799 |
| Plaintiff and Respondent, | (Super. Ct. No. SCD280854) |
| v. | ORDER CERTIFYING |
| KARL WILLIAM DORON, | OPINION FOR PUBLICATION |
| Defendant and Appellant. | |

THE COURT:

The opinion in this case filed August 9, 2023, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the requests pursuant to rule 8.1120(a) for publication are GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

O'ROURKE, Acting P. J.

Copies to: All parties